UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/29/18

------------------------------------------------------------X
               :

MAX TORGOVNICK,            :

            *Plaintiff,*       :

      *-against-*         :         17 Civ. 1782 (PAC)

SOULCYCLE, INC.,        :

           *Defendant.*    :        **OPINION & ORDER**

               :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      This is a single-Plaintiff employment discrimination case. Plaintiff Max Torgovnick

("Torgovnick"), who was employed by Defendant SoulCycle, Inc. ("SoulCycle"), claims he was

discriminated against on the basis of disability, denied reasonable accommodations, and

retaliated against for seeking medical leave, in violation of the Americans with Disabilities Act

of 1990, 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*,

the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and the New York City

Human Rights Law, N.Y. Admin. Code 8-101, *et seq.* He has filed voluminous discovery

requests which appear to be disproportionate to the needs of the case.

      Torgovnick moves now to compel production of several categories of documents and

attorneys' fees. SoulCycle objects on the bases that it has already produced documents in

response to several of these requests and Torgovnick's requests are otherwise overly broad,

unduly burdensome, duplicative, and seek irrelevant information.

      The Court holds that while Plaintiff is entitled to some of the requested discovery, the

bulk of his requests are denied.

# BACKGROUND

## I.  Alleged Discrimination

According to the amended complaint, Plaintiff was employed by SoulCycle in a few different roles, starting as a studio instructor at the East 63rd Street Studio in New York City, (ECF No. 7 ¶ 17), advancing to Key Holder/Manager on Duty at the East 63rd Street Studio, (*id.* ¶¶ 25–28), and ending up as East Coast Programming Coordinator at SoulCycle's corporate office, (*id.* ¶ 28).  While he was at the East 63rd Street Studio, Plaintiff asserts he was provided with reasonable accommodations (*i.e.* flexible scheduling, regular one-on-one meetings to discuss progress and goals, and in the moment feedback) for his medical conditions (*i.e.* Attention Deficit Hyperactivity Disorder, anxiety, panic attacks, a sleep disorder, and bi-polar disorder).  (*Id.* ¶¶ 19–28.)  Plaintiff claims these medical conditions affected his ability to sleep and arrive to work on time.  (*Id.* ¶ 23)  Plaintiff states, however, that he was not provided with similar requested reasonable accommodations when he went to work at SoulCycle's corporate office, and that he was subject to harassment and discrimination there because of his medical conditions.  (*Id.* ¶¶ 29–42.)  He complains that supervisors yelled at him for wearing headphones, (*id.* ¶ 31), failed to properly train him, (*id.* ¶ 32), and refused to meet with him to discuss his concerns, (*id.* ¶ 36).

Plaintiff states he made several attempts to meet with a Human Resources representative about this allegedly harsh treatment, which he says exacerbated his medical conditions, caused him to take a sick day, and caused strong symptoms upon returning to work.  (*Id.* ¶¶ 52–57.)  Plaintiff claims that on the day he returned, he was denied requested medical leave, a modified work schedule, or telecommuting, and was fired.  (*Id.* ¶¶ 57–59.)  Plaintiff states he was told that he would not have been fired if he had not asked for medical leave.  (*Id.* ¶ 60.)

## II.  Discovery

On April 5, 2018,[1] Plaintiff served 91 document requests and 8 interrogatories.  (ECF No. 23 Ex. C.)  Plaintiff claims that Defendant initially "responded with wholesale, boilerplate objections to every single request."  (ECF No. 23 ¶¶ 17–18.)  He also complains that Defendant initially produced only 95 documents, did not produce documents in response to a large number of requests, and did not provide a privilege log.  (*Id.* ¶ 18.)

The parties met and conferred in June and July 2018, (*id.* ¶¶ 20–21), and Plaintiff agreed to limit his requests in a July 3, 2018 letter, (*id.* ¶¶ 20, 31 & Ex. E).  Plaintiff acknowledges that Defendant produced 229 additional documents on August 3, 2018—the agreed-upon date for completed document production—and 50,712 documents without Bates stamps or other identifying information on a flash drive on August 10, 2018.  (*Id.* ¶¶ 23–25).  Plaintiff claims that Defendant identified remaining objections to document requests in an August 15, 2018 email, but "did not address all the open questions regarding the production."  (*Id.* ¶¶ 27–28.)

According to Plaintiff, Defendant has been deficient by producing documents such that it is "impossible to know (i) which requests the documents purport to respond to, (ii) which or whose files they were derived from, (iii) how the emails that were produced were identified or selected, and (iv) whether the responses were complete."  (*Id.* ¶ 30.)  In addition, Plaintiff complains that documents that should have been produced in response to certain requests are missing from Defendant's production.  (*Id.* ¶ 31.)  In his Motion to Compel, Plaintiff takes issue with Defendant's production of documents in response to Requests 16–19, 24–26, 34, 36–37, 40–41, 59–61, 64, 74–80, 82–83, 86–87.

---

[1]  Plaintiff's First Set of Document Demands and Interrogatories is dated April 5, 2015.  (ECF No. 23 Ex. C at 12.)  The Court assumes this is a mistake and the correct date is 2018.  (ECF No. 23 ¶ 16.)

# DISCUSSION

## I. Legal Standard

### A. Motion to Compel

Federal Rule of Civil Procedure 26 defines the scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. . . .

Fed. R. Civ. P. 26(b)(1).

A party may move to compel discovery under Federal Rule of Civil Procedure 37 after conferring with the opposing party in good faith. Fed. R. Civ. P. 37(a)(1). On a motion to compel, the movant "must demonstrate that the information sought is discoverable, including, among other things, that it is relevant." *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16CIV1805JPOJCF, 2017 WL 3055098, at *2 (S.D.N.Y. July 18, 2017). The movant must be able to show relevance and that the disclosure demand is proportionate to the needs of the case. In other words, the days of $100 discovery for $10 cases are over.

Of course, courts have flexibility and discretion in assuring that the requested information sought is relevant and "reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) (internal citation omitted). Accordingly, courts should limit discovery if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the

action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## II.     Analysis

Plaintiff's requests for production of documents are numerous and broad for a single-Plaintiff employment discrimination case. Defendant has produced tens of thousands of documents and met and conferred in good faith in an attempt to resolve outstanding discovery issues. Still, Plaintiff is entitled to some limited additional discovery relevant to Plaintiff's claims of discrimination and retaliation.

### A.     Documents Relating to the Other Employees Who Served in a Programming Coordinator Role (Request Nos. 16–19, 34, 40–41, 59)

16. All documents that set forth the tasks assigned to each individual, including Plaintiff, who served in a programming coordinator role.

17. All documents that relate to any training received by each individual, including Plaintiff, who served in a programming coordinator role.

18. All documents that relate to the performance of each individual, including Plaintiff, who served in a programming coordinator role.

19. The personnel files of all individuals who served in a programming coordinator role.

34. All documents that evidence any mistakes or errors made by programming coordinators other than Plaintiff.

40. All documents that relate to the assignment of a project relating to the coordination of the holiday vacation request schedule to any programming coordinator, including Plaintiff.

41. All documents that relate to performance of any programming coordinator, including Plaintiff, with respect to the coordination of the holiday schedule request.

59. The personnel file of Ashley Crosman.

Plaintiff agreed to limit these requests to the years 2015 and 2016. (ECF No. 23 at 10.)

Plaintiff alleges that Defendant "did not produce any documents relating to whether [other

program coordinators] were assigned the same tasks or the additional tasks the plaintiff was, the training they received, how their managers treated the mistakes they made, or their personnel files"—documents Plaintiff claims are relevant to show "differential treatment and discrimination," "the legitimacy offered for his termination, pretext and retaliation." (*Id.* at 11.)

Defendant claims that it has produced documents in response to Requests 16–19, 34, and 41, and that the requests are otherwise overbroad, irrelevant, and not proportionate to Plaintiff's needs. (ECF No. 27 at 8–10.) In particular, Defendant asserts that it has produced offer letters, employment agreements, and performance reviews for the relevant time period for seven programming coordinators other than Torgovnick: Stephanie Locey; Sydney Thompson; Georgia Mcintyre; Ashley Crossman; Jason Haro; Julia Superka; and Lindy Flowers. (*Id.* at 9.) Defendant suggests that production "of the entire personnel file of each individual who served in a programming coordinator role and Ashley Crossman" beyond what Defendant has produced already is unnecessary because it would result in production of files of individuals with no connection to Plaintiff and his claims. (*Id.* at 10.)

Defendant is correct; Plaintiff is not entitled to the entire personnel files of every programming coordinator regardless of their connection to Plaintiff. Where a single employee brings a claim of disparate treatment, courts ordinarily limit discovery to "information regarding employees who are similarly situated to the Plaintiff." *Rubinow v. Ingelheim*, No. CIVA 3:08-CV-1697VLB, 2010 WL 1882320, at *5 (D. Conn. May 10, 2010) (citing *Mazzella v. RCA Global Communications*, 642 F.Supp. 1531, 1547–48 (S.D.N.Y.1986) (similarly situated employees are those who "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating

circumstances that would distinguish their conduct or the appropriate discipline for it")).

Limiting production to seven similarly situated individuals is reasonable and within that group to

documents dealing with programming coordinator tasks (*i.e.* job description), training,

disciplinary records, and accommodations, if any.

### B. Documents relating to Plaintiff's supervisors (Request Nos. 24–26, 60–61)

> 24. All documents that relate to the performance of all individuals who had supervisory or managerial responsibilities over Plaintiff.

> 25. The personnel file for each individual who had supervisory or managerial responsibilities over Plaintiff.

> 26. All documents that relate to the removal, termination or resignation of any person who had supervisory or managerial responsibilities over Plaintiff.

> 60. The personnel files of Sarah Kiernan, Jordan Pianin-Kafenbaum, Kaili Stevens, Kathleen Toth and Joe Miller.

> 61. All documents relating to any complaint by any employee regarding Sarah Kiernan, Jordan Pianin-Kafenbaum, Kaili Stevens, Kathleen Toth and/or Joe Miller.

Plaintiff agreed to limit Request Nos. 24–26 to the years 2015 and 2016, Request No. 60

to complaints and performance related documents, and Request No. 61 to complaints relating to

discrimination, failure to accommodate, the work environment, and management style. (ECF

No. 23 at 11.) Still, Plaintiff complains that Defendant only produced documents "to the extent

they contain information relating to plaintiff or 'formal' complaints lodged against [the

supervisors]," (ECF No. 23 at 11), and claims the additional requested documents are relevant to

show "differential treatment and discrimination," "the legitimacy offered for his termination,

pretext and retaliation," (*id.* at 12).

Defendant asserts that "[t]hese requests are overbroad and irrelevant to Plaintiff's claims

to the extent they are not directed at information concerning Plaintiff." (ECF No. 27 at 11.)

Defendant further indicates that Requests 25 and 60 are duplicative of other requests, and that

performance evaluations of Plaintiff's supervisors and managers are irrelevant to whether Plaintiff was treated differently from his peers. (*Id.* at 11–12.) Defendant also claims that "*any* complaint by *any* employee that is unrelated to disability discrimination or retaliation is irrelevant and overbroad." (*Id.* at 12.)

The Court agrees that Request Nos. 24–26 are overbroad and seek documents irrelevant to Plaintiff's claims. Request Nos. 60–61 are narrower, as they limit the requested documents to the supervisors Plaintiff named in the amended complaint. Plaintiff is entitled to discover any claims of disability discrimination, harassment, or retaliation that have been lodged against the managers and supervisors with whom Plaintiff interacted, if such documents exist. If so, the documents would be probative of discriminatory intent against or differential treatment of Plaintiff or employees with mental disability. *See Ri Sau Kuen Chan v. NYU Downtown Hosp.*, No. 03 CIV. 3003 (CBM), 2004 WL 1886009, at *5 (S.D.N.Y. Aug. 23, 2004) ("Information regarding other complaints of sexual harassment made by defendants' employees and actions taken in response thereto is clearly relevant to plaintiff's ability to make out her prima facie case of retaliation.").

Accordingly, Defendant is directed to produce documents relating to any complaints regarding disability discrimination, retaliation, medical leave, failure to provide reasonable accommodations, and harassment by Sarah Kiernan, Jordan Pianin-Kafenbaum, Kaili Stevens, Kathleen Toth, and/or Joe Miller. (Request Nos. 60–61.)

### C. Documents relating to reasonable accommodations (Request Nos. 36 and 37)

36. All documents that relate to any request for reassignment by any employee other than Plaintiff and the response to such request.

37. All documents that relate to any requests SoulCycle has received from employees for reasonable accommodations and the response to such requests.

Plaintiff agreed to limit these requests to the years 2015 and 2016. (ECF No. 23 at 12.) Defendant states that because it does not maintain a central depository of this information, responding to Request No. 36 "would require reviewing the files and records of hundreds (or, if extended beyond the corporate office, potentially thousands) of other employees, the overwhelming majority of whom have no connection to Plaintiff or the claims in this lawsuit." (ECF No. 27 at 13.) For that reason, Defendant claims it would be unduly burdensome to respond to this request, where "there is no reason whatsoever to believe it would lead to the discovery of evidence that is probative of Plaintiff's claims." (*Id.*) Defendant similarly objects to Request No. 37 on relevance grounds and because it would be difficult to review and locate the requested documents without a central depository. (*Id.*)

Plaintiff contends that how Defendant handled requests for other employees who requested reasonable accommodations or reassignments is relevant to whether Plaintiff was treated differently from other employees because he sought accommodations for his medical conditions. (ECF No. 23 at 12–13.)

Request No. 36 is overly broad, unduly burdensome, and would result in the production of irrelevant documents about employees who have nothing to do with Plaintiff or his claims. To the extent Request No. 36 seeks relevant documents regarding reasonable accommodations, however, it is also duplicative of Request No. 37. Documents regarding requests for reasonable accommodations made to the managers and supervisors with whom Plaintiff interacted—Sarah Kiernan, Jordan Pianin-Kafenbaum, Kaili Stevens, Kathleen Toth, and/or Joe Miller—are relevant to Plaintiff's claims. *See Ri Sau Kuen Chan*, 2004 WL 1886009, at *5. The Court denies Plaintiff's motion to compel with respect to Request No. 36, but directs Defendant to

respond to Request No. 37, but only to the extent the documents relate to requests for reasonable accommodations made to Plaintiff's direct managers and supervisors.

**D.    Request No. 64: All severance agreements offered by SoulCycle to any departing employee.**

Plaintiff agreed to limit this request to the years 2014 and 2016. (ECF No. 23 at 13.) Plaintiff contends that "[i]f other employees were terminated, but were offered severance, this would provide further evidence of discrimination and retaliation." (ECF No. 23 at 13.) Defendant asserts that this request is overbroad, irrelevant, unduly burdensome, and not proportionate to the needs of this case, particularly because Defendant does not have a formal policy or practice of offering severance agreements. (ECF No. 27 at 14.) The request is far too broad. Plaintiff does not assert that he is owed a severance payment he never received due to the alleged discrimination or retaliation, and mentions severance agreements nowhere in his amended complaint. The inferences Plaintiff points to are strained and do not support a finding of relevance. Plaintiff's motion to compel documents relating to severance payments is denied.

**E.    Request No. 75: Plaintiff's email box**

Defendant states it complied with this request by producing over 50,000 emails from Plaintiff's email account from when he was promoted to East Coast Programming Coordinator to his termination. (ECF No. 27 at 15.) Plaintiff claims this production is incomplete because the volume is "miniscule" and because Defendant produced these documents without Bates stamps or other identifying information to determine how the documents were selected for production or who are the custodians of the documents. (ECF No. 23 at 13–15.)

The Declaration of Jason A. Zoldessy, Esq. and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel describes how the flash drive containing 50,000 emails is organized. (ECF No. 26 ¶¶ 18–23; ECF No. 27 at 15–16.) Specifically, Zoldessy

10

indicates that the emails were from Plaintiff's inbox, that "[u]pon information and belief, Plaintiff personally categorized and organized the electronic folders containing the documents," and that "[a]ll the e-mails in the Plaintiff's inbox were produced in the format as they existed at the time of Plaintiff's termination." (ECF No. 26 ¶¶ 20–21.) Given that the parties did not specify a format for production of electronically stored information, this description is reasonable and the production complies with Federal Rule of Civil Procedure 34, which requires a party to produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Moreover, 50,000 emails is not "miniscule" and Plaintiff has provided no factual support that Defendant has not complied with this request. Plaintiff's motion to compel these documents is denied.

**F.     Calendars, Emails and Phones of Supervisors and Human Resource contact (Request Nos. 74, 76–80, 82–83)**

74. All calendars, date books, appointment books, diaries or the like used by Noelle Banks, Kaili Stevens, Kathleen Toth and Joe Miller covering the period from June 2015 through Plaintiff's termination and any entries in such documents post-termination which relate or refer to Plaintiff.

76. All emails, text messages and other electronic communications between Kaili Stevens and Plaintiff.

77. All emails, text messages and other electronic communications between Kathleen Toth and Plaintiff.

78. All emails, text messages and other electronic communications between Joe Miller and Plaintiff.

79. All emails, text messages and other electronic communications between Noelle Banks and Plaintiff.

80. All emails sent or received by any human resource, managerial or supervisory employees, including but not limited to Noelle Banks, Kaili Stevens, Kathleen Toth and Joe Miller, that mention or relate to Plaintiff.

82. Documents sufficient to identify any telephone number, cell phone number maintained and used by Kaili Stevens, Kathleen Toth and/or Joe Miller for the years 2014 to present.

83. Documents sufficient to identify any email address maintained and used by Kaili Stevens, Kathleen Toth and/or Joe Miller for the years 2015 to present.

Plaintiff agreed to limit Request Nos. 74–80 to the year 2015, Request No. 82 to telephones used to communicate in connection with SoulCycle work during the year 2015, and Request No. 83 to email used to communicate in connection with SoulCycle work during the year 2015. (ECF No. 23 at 15.) Relevant emails and calendar entries have already been produced from Plaintiff's inbox. (ECF No. 27 at 15.) Calendar entries for Plaintiff's supervisors post-termination are irrelevant to Plaintiff's claims of discrimination and retaliation when he worked at SoulCycle. Plaintiff does not make any assertions about the relevance of the requested phone numbers or text messages. To the extent there are emails among Plaintiff's supervisors or Human Resources relating to Plaintiff's termination and/or claims of discrimination or retaliation responsive to these requests, those documents would be duplicative of those the Court ordered Defendant to produce in response to Request No. 61 *supra*. Plaintiff's motion to compel production of these documents is denied.

### G.   Other complaints (Request Nos. 86–87)

86. All documents relating to any complaint by any employee relating to SoulCycle's work environment.

87. All documents relating to incidents, reports, claims, or complaints of discrimination, violations with respect to family medical leave, failure to provide reasonable accommodations, retaliation, or harassment by or on behalf of any employee of SoulCycle and all investigations, dispositions, resolutions, settlement agreements, decisions, orders, and judgments involving any such incidents, reports, claims or complaints.

Plaintiff agreed to limit these requests to complaints by employees in the New York corporate office for the period 2014 to 2016. (ECF No. 23 at 15.) Defendant claims that this request is duplicative, overbroad, disproportionate, and unduly burdensome, as "[n]one of these complaints, if they exist, concern Plaintiff or the allegations asserted in his Complaint." (ECF

No. 27 at 16.) Plaintiff claims that these documents are relevant to Defendant's policies against discrimination and retaliation and could show "general patterns of discrimination, which is relevant to proving discriminatory intent." (ECF No. 23 at 15.)

The Court agrees that these requests are overly broad and duplicative, as relevant documents would fall within the requests with which Defendant has already complied or for which the Court has ordered compliance (*e.g.* Request Nos. 19, 37, 61). Plaintiff's motion to compel production of these documents is denied.

## III. Attorneys' Fees

There is no basis for an award of attorneys' fees under Federal Rule of Civil Procedure 37. Defendant's counsel negotiated in good faith; took correct legal position and made legitimate objections; and produced responsive documents. While the Court has directed further limited production, it denies the great bulk of Plaintiff's requests.

To sum up, Defendant met and conferred with Plaintiff and lodged objections to the scope and burden of production that were substantially justified. This meets the legal requirements and an award of attorneys' fees would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Cullins v. Heckler*, 108 F.R.D. 172, 177 (S.D.N.Y. 1985). Plaintiff's motion for attorneys' fees is denied.

### CONCLUSION

The Clerk is directed to terminate the motion at Docket 22.


Dated: New York, New York
      October 29, 2018

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge